Teresa Gibbons *v.* Patrick F. Gibbons, Guardian of Annie, Maggie, Alexander and Frank Gibbons, and The Northwestern Mutual Life Insurance Company, Appellants.

*Equity—Master's findings of fact—Review.*

The Supreme Court will not reverse a master's finding of facts based upon sufficient evidence and sustained by the court below, to the effect that an assignment of an insurance policy was executed by the assignor, shortly after she had been taken from an insane asylum by her husband, and at a time when she was not restored to the possession of her mental powers, and was incapable of transacting business, and was acting under the undue influence of her husband.

Argued Feb. 26, 1896.    Appeal, No. 142, July T., 1895, by defendants, from decree of C. P. Lackawanna Co., Jan. T., 1894, No. 2, on bill in equity.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.   Affirmed.

Bill in equity to set aside an assignment of a life insurance policy executed by the complainant at a time when she was alleged to be insane.

The case was referred to S. B. Price, Esq., as master, who reported :

1. That the plaintiff was, at the time this suit was instituted, the widow of John T. Gibbons, deceased.

2. That the said John T. Gibbons, during his lifetime, procured a policy of insurance upon his life in The Northwestern Mutual Life Insurance Company, in the sum of two thousand (2,000) dollars, to be paid at his death to Teresa Gibbons, plaintiff in this suit.

3. That the plaintiff suffered from the grippe in the spring of 1890, and her intellect was so impaired that physicians recommended that she be taken to the insane department of the Hillside Home, and she was taken to the home and remained there from the 11th of March until some time after the middle of May, 1890.

4. That in May, 1890, when the plaintiff was taken from the Hillside Home to the home of her husband in the city of Scranton, she was not fully restored to health, and her mind was still affected to such an extent that she was incapable of transacting business.

5. That on the 4th day of August, 1890, the plaintiff and her husband, John T. Gibbons, executed an assignment in writing of the policy of insurance in The Northwestern Mutual Life Insurance Company, above mentioned, to their children, Annie, Maggie and Alexander Gibbons, share and share alike; but, in the opinion of the master, the plaintiff at the time of the execution of said assignment, had not the requisite capacity for the transaction of business, and was led to the execution of the assignment, by the undue influence of her husband, John T. Gibbons.

6. That John T. Gibbons, husband of the plaintiff, died on the 10th day of September, 1893, and at the time of his death said policy of insurance was in force. The decedent left to survive him the plaintiff and four children, Annie, Maggie, Alexander and Frank Gibbons, the latter born subsequent to the 4th day of August, 1890.

7. That John T. Gibbons, shortly before his death, executed a will in which he bequeathed any money which should become due upon the insurance policy aforesaid to his four children above named, and appointed Patrick F. Gibbons, his brother, guardian of said children, and named James Sweeney executor of said will; but did not devise or bequeath anything to Teresa Gibbons, the plaintiff, his wife.

8. That there is nothing in the evidence which establishes that the plaintiff knew the contents of the paper which she executed in the office of the agent of the insurance company, and by which it is alleged she and her husband assigned the policy to their children, or that she was made acquainted with the effect of said assignment.

9. That the husband requested her to execute the assignment, but the evidence does not disclose that the same was explained to her.

10. That the plaintiff and John T. Gibbons, deceased, were husband and wife at the time the policy of insurance was taken out (the date of their marriage is not in the evidence) and were cohabiting at the time the wife was taken ill in the spring of 1890, and continued to dwell together after the return of Mrs. Gibbons from the asylum, and from that time until after the assignment, and until the death of John T. Gibbons, the husband.

11. That the fact that Mrs. Gibbons was insane, was established beyond question. In the opinion of the master, the evidence does not establish that she was fully restored prior to August 4, 1890.

From the above facts, the master finds the following conclusions of law :

1. That the assignment of the policy executed on the 4th day of August, 1890, by the plaintiff was void and of no effect.

2. That the relation between husband and wife is a confidential one, and where the husband, either for himself or his children, obtains an advantage over the wife, he or they should, under the usual rule, prove affirmatively that the transfer or conveyance was the intelligent and deliberate act of the wife, free from the influence of the relation existing between the parties.

3. That undue influence may be inferred from the relations existing between the parties to the transaction.

The court overruled exceptions to the master's report, and entered a decree declaring the assignment void.

*Error assigned* was decree of the court.

*M. A. McGinley* and *W. W. Watson*, for appellants.

*A. D. Dean*, for appellee.

OPINION BY MR. JUSTICE WILLIAMS, May 18, 1896 :

John T. Gibbons was, in 1888, when the policy of life insurance now in controversy was obtained, the husband of Teresa

Gibbons and so continued till the time of his death in 1893. The policy was for $2,000 and was made payable to the wife. Should it now be paid to her? The defendant contends that it should be paid to him as the guardian of the children of John T. and Teresa Gibbons because in 1890 she joined her husband in a written assignment of the policy to their three children, Annie, Maggie and Alexander. Frank was born after the assignment and had no title under it. The plaintiff's position is that the assignment was not her intelligent act and that it does not bind her. The testimony shows that she became insane in the spring of 1890 and was placed in the insane department of the "Hillside Home" near Scranton for care and treatment. At the end of about two months, she was sufficiently restored to be allowed to return home. A short time after her return, her husband took her to the office of the insurance agent through whom the policy had been obtained and had the assignment of the policy prepared, which, at his request, without any inquiry on her part, or explanation on his, she signed. She now asks that this assignment be canceled, alleging that she did not know its contents, and did not consciously execute it. The case turns, therefore, wholly upon the question of her restoration to sanity at the time the policy was assigned to the three children. The master heard the evidence upon this question at length and found the fact to be that the plaintiff was not fully restored to health, nor to the possession of her mental powers, when she was taken by her husband from the Hillside Home to her own home in May, 1890, but was at that time incapable of transacting business. He further finds that "the plaintiff at the time of the execution of said assignment, had not the requisite capacity for the transaction of business and was led to the execution of the assignment by the undue influence of her husband, John T. Gibbons." This question of the mental condition of Mrs. Gibbons when the assignment was made was considered by the court below on exceptions to the master's report and the learned judge concurred in the conclusions reached by the master. It is well settled that findings so made and concurred in will be disturbed only for plain error. The question is not now whether we would have found the facts in the same manner, from the evidence as it appears to us, but whether the finding is plainly erroneous: Stocker v. Hutter,

134 Pa. 19; and this rule is equally applicable when the question relates to the mental condition of a grantor: Doran v. McConlogue, 150 Pa. 98. It does not matter that the evidence was conflicting. The master having had the witnesses before him is better qualified to judge of their credibility and the value of their testimony: Brotherton v. Reynolds, 164 Pa. 134. Accepting the facts as found for us by the master, and concurred in upon review by the judge sitting as a chancellor, the legal conclusion on which the decree rests follows logically. If the plaintiff was incapacitated for the transaction of business by reason of her mental condition and executed the assignment under the influence of her husband and not because of an intelligent knowledge or purpose, she was not bound by it.

The assignments of error are overruled and the decree affirmed; the costs to be paid by the appellee.