# Louise Morris v. State Mutual Life Assurance Company of Worcester, Massachusetts, Appellant.

183  563
191  215

183      563
19 SC ² 33

183      563
207     ¹477
23 SC ¹ 11

183  563
f40SC¹390

*Insurance—Life insurance—Application attached to policy—Act of May 11, 1881.*

In an action upon a policy of life insurance where it appears that the medical examiner's report is made a part of the application, but it is not contained in the copy of the application attached to the policy, the application is not attached to the policy within the meaning of the Act of May 11, 1881, P. L. 20, and is not admissible in evidence.

*Insurance—Life insurance—Suicide.*

Where a policy of life insurance contains no provision, stipulation or condition as to suicide, the policy will not. if the insured commits suicide, be avoided as against the wife of the insured, who is the nominated beneficiary.

Argued Oct. 15, 1897. Appeal, No. 140, Oct. T., 1897, by defendant, from judgment of C. P. Venango County, April Term, 1896, No. 11, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. WILLIAMS and MITCHELL, JJ., dissent.

Assumpsit on a policy of life insurance. Before CRISWELL, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial defendant's counsel offered in evidence paper identified by the witness as medical examiner's report, signed by Louis Morris.

The purpose of the offer being, first, to show that the assured, Louis Morris, made certain statements to the medical examiner in regard to his health and physical condition, and in regard to having been attended by a physician, which they propose, by the evidence to be adduced on the trial, to prove to be false and material misrepresentations; second, to show such answers to the medical examiner of the company in relation to the physical condition and history of the assured as to health, as were absolutely false; and for the purpose of showing fraud on the part of the assured in obtaining the policy of insurance in question,

and for the further purpose of showing that his contract that his answers to the medical examiner of the company should be full and true was broken by the assured to the damage of the company.

The offer was objected to by counsel for plaintiff, for the reason that, being referred to in a part of the same paper already in evidence, and thereby made a part of it, it was not either indorsed upon or attached to the policy, as required by the act of 1881.

By the Court: The offer and the objection together raise the question as to the meaning of the word "application," as used in the act of 1881. The paper now offered and identified by the witness is indorsed upon and bears the same date as the paper heretofore offered in evidence as the application, in which latter paper reference is made to the paper now offered. The whole is indorsed as an application for policy No. 33,909. Whether or not the first page of this is in fact the application does not depend upon the fact that it is so named in the preparation of the papers. We are of the opinion that the paper now offered constitutes a part of the application of the insured, and, not being attached to the policy, and a copy thereof not being attached to the policy, as required by the statute, it is inadmissible. For these reasons the offer is overruled, and the objection sustained. Bill of exceptions sealed for defendant. [1]

Defendant made the following offer:

It appearing by the application offered in evidence by the plaintiff, and by the copy thereof attached to and forming a part of the policy offered in evidence by the plaintiff, that in said application the applicant being required to answer the following question, to wit: "Are you now in good health, and how long have you been so?" answered, "Yes, always." And it further appearing in said application that he agreed that the answers and statements made therein, inter alia, are offered as a consideration of the policy contract, the defendant now proposes to prove that after the making of the said application, the said Louis Morris declared in writing to the company's medical examiner, in answer to the question "Have you had any severe injury? If so, what effect, if any, remains?" answered that he had not had any severe injury, his answer being literally, "No." And further to show that he further declared in writ-

ing to the said medical examiner, in answer to the question, " Have you now or have you had any severe illness, disease or symptoms of disease, not enumerated above?" that is to say, asthma, inflammation of the lungs, bronchitis, pleurisy, consumption, spitting of blood, habitual cough, diseases of the heart, palpitation, apoplexy, palsy, insanity, habitual headache, dizziness, fits or convulsions, diseases of the liver, jaundice, yellow fever, dropsy, piles, fistula in ano, diseases of the kidneys, diseases of the bladder, diseases of the urinary or generative organs, gravel, dyspepsia, typhoid fever, diseases of the skin, rupture, diseases of the joints, cancer, or any tumor, or scrofula, to all of which he answered to the said physician, " No." That he then answered that he had not had any serious illness or diseases or symptoms of disease not so enumerated; that he also answered to the said physician, in answer to the question, " How long since you were attended by a physician and what is the name of your medical attendant, and where does he reside?" " Don't know; many years." To the question, " Name and residence of physician?" he answered, " None since childhood." This the defendant proposes to follow by evidence tending to show that all of these answers were false. This for the purpose of showing that the answer to the question set out in the application, to wit: " Are you now in good health, and how long have you been so?" was false.

The offer was objected to by counsel for plaintiff as being substantially a repetition of the offer which had just been overruled by the court, for the reasons then stated.

By the Court: If it is proposed to prove the matters offered by the paper which has just been offered and rejected, the offer is overruled and the objection thereto sustained. Bill of exceptions is sealed for defendant. [2]

The defendant offered the medical examination, to be followed by proof that the policy, the application, and medical examination are separate and distinct parts of the contract of the policy of insurance, and that by the terms of the paper itself, it is no proper part of the application, but is simply appended thereto.

Counsel for plaintiff objected to the offer for the reason that the writing proposed to be given in evidence is a part of the application, and a copy thereof is not attached to or indorsed upon the policy.

Offer overruled by the court, objection sustained, and a bill of exceptions is sealed for defendant. [3]

Defendant offered to show by Dr. W. C. Shaw that on January 26, 1894, Louis Morris stated to him that he had no attending physician since his childhood; that he had never had any severe injury; that he had had no serious illness, disease or symptoms of disease of any kind or description whatever; to be followed by evidence that the declarations of the said Morris, made to the said Dr. Shaw, were false. Objected to by counsel for plaintiff.

By the Court: I think it would not be competent to admit any proof of which the writing offered in evidence is the best evidence. Therefore, if it is intended to prove by the witness any matters of which the writing just rejected is the best evidence, we would be required to overrule the evidence offered. Bill of exceptions is sealed for defendant. [4]

Counsel for plaintiff moved that so much of the application as has been admitted in evidence on the part of the plaintiff be stricken out. Objected to by counsel for defendant.

By the Court: At the time the offer was made the paper was in the hands of counsel, and the court did not observe the connection between what was offered as the application and the answers to the inquiries made to the medical examiner. The logic of our recent decision, holding such answers were a part of the application, requires us to hold that the policy was admissible in evidence without the application offered therewith, and we now admit the policy and exclude what was offered and received as the application. Bill of exceptions is sealed for defendant. [5]

Verdict and judgment for plaintiff for $29,250. Defendant appealed.

*Errors assigned* among others were (1–5) rulings on evidence, quoting the bill of exceptions.

*J. S. Ferguson*, with him *E. G. Ferguson* and *James Denton Hancock*, for appellant.—The act of 1881 was based upon the idea that the assured should always have before him the statements which he had made, and that insurance companies should be precluded from setting up defenses based upon statements of

the assured which had been made many years before the loss occurred in his lifetime. In other words, it was intended to strike down a defense which the insurance company had concealed possibly for many years. But in this case we set up no concealed defense. The answers which the assured had made, as set out in the medical examiner's report were before him every time he chose to look at the policy of insurance. He knew whether those answers were true or not, and it seems to us that the spirit of the law authorizes a defense upon their falsity, and it is not hardship to his beneficiary that such defense should be permitted.

Fraudulent intention is seldom openly avowed, and ordinarily its existence must be adduced from the circumstances surrounding the particular transaction, and from ·the apparent motive and conduct before and after the event: Runk v. Mut. Life Ins. Co., 28 U. S. App. 612.

Wilful self-destruction by the insured, when he is sane, is a fraud on the insurer, whether the purpose to commit the act is formed before or after the policy is taken out: Hartman v. Keystone Ins. Co., 21 Pa. 479; Gibbons v. Gibbons, 175 Pa. 475; Dufaur v. Professional Life Assurance Co., 25 Beav. 599; Jones v. Consolidated Investment Assurance Co., 26 Beav. 256; White v. British Empire Mut. Life Assurance Co., L. R. 7 Eq. 394; Bliss on Life Ins. sec. 10; Ruse v. Mut. Benefit Life Ins. Co., 23 N. Y. 516; Whitehead v. New York Life Ins. Co., 102 N. Y. 143.

It is presumed that a policy of life insurance taken out by a husband in favor of his wife is intended as a provision for her after his death, and not as a security for his debt to her: Karch's Est., 133 Pa. 84.

*C. Heydrick*, with him *F. W. Hays* and *C. I. Heydrick*, for appellees.—No reason is apparent, for taking these writings, even if contained in separate instruments, out of the rule that when two or more instruments are executed by the same persons in the course of the same transaction they are to be treated as one: Thompson v. McClenachan, 17 S. & R. 110; Greenfield's Est., 14 Pa. 501; Cummings v. Antes, 19 Pa. 287; Reitenbaugh v. Ludwick, 31 Pa. 138; Kramer v. Dinsmore, 152 Pa. 264.

This Court has had frequent occasions to consider this stat-

ute, and has uniformly so construed it as to advance the remedy and suppress the mischief: New Era Life Ass'n v. Musser, 120 Pa. 389; Lenox v. Ins. Co., 165 Pa. 575; Fire Ins. Co. v. Oberholtzer, 172 Pa. 223.

That, living, Louis Morris could not destroy the interest vested in his wife is shown by Gibbons v. Gibbons, 175 Pa. 475, and by Matlack v. Mutual Life Ins. Co. of N. Y., 180 Pa. 360.

In the absence of any statement as to suicide, the policy is not avoided by that act: Fitch v. American Popular Life Ins. Co., 59 N. Y. 557; Darrow v. Family Fund Society, 116 N. Y. 537.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

On January 13, 1894, defendant issued to plaintiff, on the life of her husband, Louis Morris, a policy of insurance, in the sum of $25,000; the term of the policy was twenty-seven years; the annual premium, $1,305. The husband died on March 29, 1894; his widow made due proof of his death as required by the policy, and made demand on the company for the amount of the insurance. The company refused payment: 1. Because the assured had committed suicide, which was a risk it had not assumed in its contract, there being in the application this stipulation: "That self destruction, sane or insane, within two years from the date of said application, is a risk not assumed by the company in said contract of insurance." 2. That the applicant, to the following question in the application: "Have you used, or do you use, tobacco, chloral, opium or other narcotics?" answered, "No," which answer was wholly false; and the insured in his application had agreed that his statements in his application and those made to the medical examiner of the company were true, and part of the consideration of the contract. 3. That to the question: "Is any application for other insurance now pending or contemplated?" the applicant answered, "Yes, Equitable, $25,000;" that he further answered that he had an application pending in the Ætna Insurance Co. for $25,000; which answers were false and misleading, and so intended to be by the insured, for within thirty days thereafter, including the two policies named, he obtained upwards of $200,000 insurance, and at that time, he had actually pending, with two other companies, the Penn. Mutual of Pennsylvania, and

Mutual Life of New Jersey, applications for policies.  4.  That to a question of the medical examiner: " Have you had any severe injury ? " the insured answered: " No," whereas in fact he had been seriously injured in a railroad accident, also by being run over by a wagon.  5.  That he had answered, he had not been attended by a physician for any ailment since childhood, whereas he had been attended by a physician the year before, for a serious ailment.

This plaintiff, the beneficiary in the policy, brought suit, and defendant filed affidavit of defense averring in substance the foregoing facts, and on the issue thus made up, the case went to trial before a jury.  The plaintiff offered in evidence the policy; the offer was objected to by defendant on the ground that it did not include the application, which by the policy itself was partly the consideration and contract, the two constituting the written contract.  The court sustained the objection; thereupon plaintiff offered the policy with that part of the application containing eight questions and answers thereto indorsed thereon ; this was objected to by defendant, because not accompanied by the report of the company's medical examiner, which it was argued also formed part of the consideration of the contract and was referred to in the application.  The court overruled the objection, and the policy with so much of the application as was indorsed thereon was read to the jury; to this ruling an exception was sealed for defendant.  This evidence was followed by the company's receipt for first annual premium; and by the preliminary proofs to company of death of insured, and plaintiff rested.  The defendant then offered in evidence the medical examiner's report, which was not indorsed on nor attached to the policy ; to this plaintiff objected, on the ground, that, not being attached to the policy as required by the act of May 11, 1881, it was inadmissible as evidence.  The purpose of the offer as stated by defendant's counsel was to show, that the insured in order to obtain the policy made false statement as to his health, physical condition, and as to the attendance of a physician, and that his undertaking as part of the contract that his answers should be full and true was broken.  The offer was overruled, the court saying: " We are of the opinion that the paper offered constitutes a part of the application of the insured, and not being itself attached to the policy, nor a copy thereof,

as required by the statute, it is inadmissible." To this ruling
an exception was taken by defendant. Other offers were made,
but they were all subject to the same objection, and were over-
ruled. The case then went to the jury on the admitted facts,
the contract on the face of the policy, death of insured and pre-
liminary proofs to the company; under the instructions of the
court there was a verdict for plaintiff in the amount of the pol-
icy, and defendant appeals, assigning twelve errors. They are
all determined by an answer to the one question: Was the
application admissible under the act of 1881?

The policy is as follows:

          " Number 33909.              Amount $25,000.
          " Premium $1,305.00.          Term 27 years.

" This policy of Assurance witnesseth:

" That the State Mutual Life Assurance Company of Wor-
cester in consideration of the representations made in the appli-
cation for this policy, which are hereby made a part of this
contract, and of the payment of the sum of thirteen hundred
and five dollars, and of the payment of a like sum on or before
the 30th day of January in each year during the term of this
policy, does insure the life of Louis Morris, of Washington,
county of Washington, and state of Pennsylvania, in the amount
of twenty-five thousand dollars, for the term of twenty-seven
years, and does hereby promise to pay said amount at its home
office in Worcester to the person whose life is hereby insured,
or his assigns, on the 30th day of January, A. D. 1921, or in
the event of his death prior to said date, to pay said amount to
his wife, Louise Morris, her executors, administrators, or assigns,
upon satisfactory proof of the death of the insured, after deduct-
ing therefrom all indebtedness to the company. This policy
shall be incontestable after two years from the date of its issue,
provided the premium shall be paid as agreed."

This is the whole of the contract before the jury, for that part
of the application indorsed on the policy and read, was after-
wards stricken out by the court, leaving the case stand for plain-
tiff on the policy as quoted.

The act of 1881 is as follows:

" All life and fire insurance policies . . . . which contain any
reference to the application of the insured, or the constitution, ·

by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto or having any bearing upon said contract, shall contain or have attached to said policies correct copies of the application as signed by the applicant and the by-laws referred to, and unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties."

The first question is, What constituted the application? It seems to us there can be but one answer to this from a mere inspection of the paper. It is one sheet of paper, the contents inscribed and printed on three of the pages. The first or outside page reads thus : " No. 33909. Application. State Mutual Life Assurance Co. of Worcester. Louis Morris, Washington Pa. Amount, $25,000. Date, January 30th, 1894. Term, 27 years. Age, 52. Premium, $1,305. Occupation, Manager and superintendent Refining Co. Agent, J. D. Bigger. Approved January 29, 1894. A. G. Bullock, pres." This is what appears as the outside indorsement on the first page of the folded paper. The brief indorsement, " Application," with what follows, is not the application, but indexes or points to the contents within as the application which will be disclosed when the paper is unfolded. On opening it, the second page is headed thus : " Application for Insurance in the State Mutual Life Assurance Co. of Worcester, Mass." Then follow eight consecutive numbered interrogatories to the insured, all answered in writing. Then follows this stipulation: " I, the applicant for insurance, do hereby agree that the foregoing answers and statements and also those made to the company's medical examiner are true and full, and are offered as a consideration of the policy contract, which shall not take effect until the first premium shall have been paid during my life and good health ; " dated January 26, 1894, and signed by the insured. Then follows the medical examiner's report on the third page, headed " medical examiner's report," which is made up of printed interrogatories and written answers, from 9 to 41 inclusive. It will be noticed the number on the second page ended with 8 ; these go on consecutively, commencing in the examiner's report with 9. But the defend-

ant itself, in its affidavit of defense, in effect averred that the
"medical examiner's report" formed part of the application,
thus: "Said plaintiff, in the statement filed in this case, has
not set out a full copy of the policy of insurance sued upon.
That attached to the said policy, and forming part thereof, is a
copy of the application of Louis Morris, the assured, for the said
policy of insurance referred to, and in and by the said applica-
tion the said Louis Morris did agree, inter alia." Then follows
an averment of false representation as to Nos. 5, 6, and 7 of that
part of the application on second page, and Nos. 11, 12 and 15
of the medical examiner's report on third page; that is, in the
omitted application the insured made six false representations,
three of them to the agent, three to the examiner; the defend-
ant itself making no distinction between the second and third
pages of the paper, and terming the whole the "application."
The whole paper is clearly the application, and was properly so
construed by the court below. The defense, without it, as
against the wife, the beneficiary in the policy, was hopeless, for
the policy by its express terms is issued "in consideration of
the representations made in the application for this policy, which
are hereby made a part of the contract." Not being attached
to the policy, it could not be read in evidence by defendant; if
not read, then nothing stood between plaintiff and the verdict
she got.

It is maintained however by appellant that even if the appli-
cation be excluded, nevertheless suicide avoided the policy, and
there could be no recovery; therefore, the court erred in not
admitting evidence as to the cause of death. Runk's Executors
v. Life Ins. Co., 28 U. S. App. 612, is cited as sustaining this
contention. It is there decided, that it is a fundamental condi-
tion of the contract, although the policy is silent on the subject,
that the insured while sane will not voluntarily destroy his life.
That, however, is not this case. We are not called upon to
decide what would have been the effect on the contract if the
policy itself had been payable to the insured, or to his personal
representatives. This was payable to his wife, who had an
interest in his life; and she, in fact, paid the first premium by
lifting the note given by him for it. In Gibbons v. Gibbons,
175 Pa. 475, Matlack v. Life Ins. Co., 180 Pa. 360, we have
decided that the insured cannot defeat the gift to his wife by a

fraud upon her, or by collusively forfeiting it for nonpayment of premium, and then having a new one issued to another beneficiary. The point before us has not been directly decided in this state, but has been in other states. In Fitch v. Life Ins. Co., 59 N. Y. 557, the Court says : " The policy contained no stipulation that it should be void in case of the death of the insured by suicide. It was not taken out for the benefit of Fitch, the insured, but of his wife and children. Although they were bound by his representations and any fraud he may have committed in taking out the policy, the policy having been obtained through his agency, yet they were not bound by any acts or declarations done or made by him after the issue of the policy unless such acts were in violation of some condition of the policy. . . ." This case is followed in Darrow v. Family Fund Society, 116 N. Y. 537. We are clearly of the opinion that the weight of authority is to the effect that where the policy is silent as to suicide, it will not for such act be avoided as against the wife of deceased, who is the nominated beneficiary.

We have had occasion to apply the act of 1881 in many cases since its passage. In Life Ass'n v. Musser, 120 Pa. 389, we said, PAXSON, C. J., rendering the opinion : " The act of 1881 was but the exercise of the clearly recognized power of the state to regulate the mode by which contracts shall be made and proved. It is a wise and beneficent act, founded upon sound reasons of public policy; it affords protection to persons who insure their lives or property, and can injure no company conducted upon honest business principles." Again, in Lenox v. Ins. Co., 165 Pa. 575, we again said, MITCHELL, J., delivering the opinion : " It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract and, if it contained errors have them rectified before it became too late." To the same effect are Hebb v. Ins. Co., 138 Pa. 174, and Ins. Co. v. Oberholtzer, 172 Pa. 223. So that the construction of the act

of 1881 is settled by a number of carefully considered judgments. If the act seems to work injustice to this appellant, it is not real, but only apparent. All any suitor can demand of a court is justice according to law. The law in justice to all insurers directs all companies to attach to their policies a copy of the application; failing in this, a penalty is imposed. To hold otherwise in a particular case would be in the teeth of the law, for it makes no exception because of a particular hardship. We see no reason why this company should be exempt from the penalty for its gross neglect to obey the plain injunction of an act of assembly.

All the assignments of error are overruled and the judgment is affirmed.

MR. JUSTICE WILLIAMS, dissenting.

The act of assembly on which this judgment is made to rest was intended to protect the insured against technical and unconscionable defenses made by the insurance companies by setting up conditions, exceptions and provisions to which the attention of the insured had never been called. Such defenses were without merit, and operated unjustly as a general rule. Its operation ought not to be extended beyond the mischief to be remedied, and its own legitimate purpose. The opinion of the majority seems to me to be an extension of the application of this statute beyond its letter and its spirit, to the exclusion of a meritorious defense against an obviously fraudulent claim, devised and executed by the insured. I cannot concur therefore in this judgment.

MITCHELL, J., concurs in this dissent.