# NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. McCUE, ET AL.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 138. Argued December 20, 21, 1911.—Decided February 19, 1912.

The obligation of a contract depends upon the law of the State where made.

A life insurance policy which by its terms does not become a completed contract until delivery on payment of first premium is to be construed as a contract made in the State where the first premium is paid and the policy delivered, notwithstanding a recital that it is to be construed as though made in another State. *Equitable Life Society* v. *Clements*, 140 U. S. 226.

In this case, *held*, that a policy issued by a Wisconsin company on the life of a resident of Virginia, to whom it was delivered in that State on payment of the first premium, is a Virginia contract.

Even though a policy in a mutual life insurance company be a property right, it is the measure of rights of every one thereunder, and if the owner thereof cannot recover because it would be against public policy to permit a recovery, neither can the innocent heirs of that person recover.

A policy of life insurance, silent on the point, does not cover death by the hand of the law. This is consonant with the rulings of the Virginia courts.

*Quære:* Whether in a case of this nature this court would have to yield to the determination of what a state court has declared to be its public policy.

*Quære:* What the public policy of the State of Wisconsin is on the liability of an insurance company for death of the insured by the hand of the law.

167 Fed. Rep. 435, reversed.

THE facts, which involve the liability of a life insurance company on a policy on the life of one who came to his death by hanging after conviction and sentence for mur-

der, and the construction of the policy itself, as well as by what law it is to be construed, are stated in the opinion.

*Mr. William H. White, Jr.,* and *Mr. William H. White,* with whom *Mr. George H. Noyes* and *Mr. John R. Dyer* were on the brief, for petitioner:

The policy was not a Wisconsin contract but a Virginia contract, because the application was made, the premium paid, and the policy delivered in Virginia. *Equitable Life Assur. Soc.* v. *Clements,* 140 U. S. 226; *Mutual Life Ins. Co. of New York* v. *Cohen,* 179 U. S. 262; *Northwestern Life Ins. Co.* v. *Elliott,* 5 Fed. Rep. 225, 228. See also *Knights of Pythias* v. *Meyer,* 198 U. S. 508; *Ritter* v. *Mut. Life Ins. Co.,* 169 U. S. 139.

The business of insurance is not commerce, and the making of a contract of insurance is a mere incident of commercial intercourse in which there is no difference whatever between insurance against fire, insurance against the perils of the sea, or insurance of life. *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389; *St. Johns* v. *The Amer. Mut. Life Ins. Co.,* 13 N. Y. 31–38; *Rosenplanter* v. *Prov. Sav. Life Assur. Soc.,* 96 Fed. Rep. 721; *Mutual Life* v. *Cohen,* 179 U. S. 262; *Hicks* v. *National Life Ins. Co.,* 60 Fed. Rep. 690; 25 Cyc. 748; Minor on the Conflict of Laws, 399; and see *Cravins* v. *N. Y. Life Ins. Co.,* 148 Missouri, 600; *Wall* v. *Equitable Life Assur. Soc.,* 32 Fed. Rep. 273; *Mutual Life Ins. Co.* v. *Robinson,* 54 Fed. Rep. 580; *Equitable Life Ins. Co.* v. *Winning,* 58 Fed. Rep. 541; *McMaster* v. *N. Y. &c. Co.,* 78 Fed. Rep. 33, 37; *Assurance Society* v. *Clements,* 140 U. S. 226.

The contract is one to be construed by the general commercial law of the country as enforced by the Federal Courts regardless of that of the State where it was made. *Swift* v. *Tyson,* 16 Pet. 1, 18; *Oates* v. *First Nat. Bank,* 100 U. S. 239, 246; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Manhattan Life Ins. Co.* v. *Boughton,* 109 U. S. 121;

*Pleasant Township* v. *Ætna Life Insurance Co.*, 138 U. S. 67; *Lake Shore &c. R. R. Co.* v. *Prentice,* 147 U. S. 101, 106.

A policy of insurance is a contract, the construction of which should come within the general commercial law. *Carpenter* v. *The Providence Ins. Co.*, 16 Pet. 495, 511; *Washburn & Moen Mfg. Co.* v. *Reliance Marine Ins. Co.*, 106 Fed. Rep. 116–7; aff'd 179 U. S. 1; *The Barnstable,* 181 U. S. 464, 470; *Northwestern Nat'l Life Ins. Co.* v. *Riggs,* 203 U. S. 255.

The laws of Wisconsin do not authorize a recovery in this case: *Patterson* v. *Natural Premium &c. Ins. Co.*, 100 Wisconsin, 118; *McCoy* v. *Northwestern Relief Ass'n,* 92 Wisconsin, 577; *Whitfield* v. *Ætna Life Ins. Co.*, 205 U. S. 489.

There can be no recovery on a life insurance policy where the insured is legally executed, the policy being silent on the subject. *Amicable Society* v. *Bolland,* 4 Bligh (N. S.), 194; *Burt* v. *Union Central Ins. Co.*, 187 U. S. 362, 365; *Ritter* v. *Mutual Life Ins. Co.,* 169 U. S. 139.

To permit a recovery when death has resulted from a violation of law is contrary to public policy. *Hatch* v. *Mutual Life,* 120 Massachusetts, 550; *Wells* v. *New Eng. Mut. Life Ins. Co.*, 191 Pa. St. 207; *Murray* v. *N. Y. Life Ins. Co.*, 96 N. Y. 614; *Bloom* v. *Franklin Life Ins. Co.*, 97 Indiana, 478.

*Mr. Daniel Harmon,* with whom *Mr. H. W. Walsh* and *Mr. G. B. Sinclair* were on the brief, for respondents:

The contract upon which this suit has been brought is not void as against public policy. *Richardson* v. *Mellish,* 2 Bing. 229, 252; *Steamship Co.* v. *McGregor* (1892), App. Cas. 25, 45; *Ramboll* v. *Soojumnull,* 6 Moore, P. C. 310; *Printing Co.* v. *Sampson* L. R., 19 Eq. 465; *Moore* v. *Woolsey,* 4 E. & B. Q. B. 243; *Smith* v. *DuBose,* 78 Georgia,

413; *Richmond* v. *Dubuque R. R. Co.*, 26 Iowa, 190; *Kellogg* v. *Larkin*, 3 Pinn. 123; *S. C.*, 56 Am. Dec. 164, 168; *Swann* v. *Swann*, 21 Fed. Rep. 299; *Equitable Life Co.* v. *Waring*, 117 Georgia, 599; *The Homestead Case*, 22 Gratt. 301; *License Tax Case*, 5 Wall. 462; *Vidal* v. *Girard*, 2 How. 128; citing *Pierce* v. *Randolph*, 12 Texas, 200; *Houlton* v. *Nichols*, 96 Wisconsin, 393.

Courts are careful not to encroach unduly upon the liberty of contract. Contracts are not interfered with except where they clearly appear to be prejudicial to the public interest. No person can seriously believe that, if a life policy is paid in case of death by hanging, it has a tendency to encourage murder in order to mature the policy by being hung. If benefit to one's heirs by reason of death is an encouragement to crime to accomplish death, then the laws of descent, and the statutes abolishing attainder are equally incentives to crime. The benefit in heirs by execution of the ancestor cannot be said to be subversive of public interest.

There is nothing in the contract which in terms or by necessary implication amounts to an agreement to do an illegal act, or which requires the performance of such an act. If the policy were payable upon the sole condition of death by hanging, there might be some plausibility in such a contention.

There is nothing on the face of the policy which would render it void.

Where the consideration and the matter to be performed are both legal, plaintiff is not precluded from recovering by an infringement of the law not contemplated by the contract. *Wethrell* v. *Jones*, 3 Barn. and Adolph. 221; *Waugh* v. *Morris*, 42 L. J. Q. B. 57; *Brier* v. *Dozier* (Va.), 24 Gratt. 1; *McDonald* v. *Triple Alliance*, 57 Mo. App. 87; *Fitch* v. *Ins. Co.*, 59 N. Y. 557; *Mills* v. *Rebstock*, 29 Minnesota, 380. The validity of this contract is to be determined by the law of Wisconsin.

The law governing the obligation of this contract does not avoid it. May on Insurance, 402.

The inquiry in the Federal courts is not general, independent of any specific law, but specific as to the law of the State of the obligation.

Whether or not this contract is valid or is to be held void must be determined by the law of the State creating the obligation.

The rule that in matters of general commercial law or general jurisprudence Federal courts are not bound by state decisions does not apply to this case. *Wheaton* v. *Peters*, 8 Pet. 591; *Bucher* v. *Cheshire R. R. Co.*, 125 U. S. 555; *Hudson Furniture Co.* v. *Harding*, 17 C. C. A. 203; *Chi., M. & St. P. Ry. Co.* v. *Solan* (1897), 169 U. S. 133; *Gatton* v. *Chi., R. I. & P. Ry. Co.* (Iowa), 28 L. R. A. 556; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *McClaine* v. *Prov. L. Ins. Soc.*, 49 C. C. A. 31; *Burgess* v. *Seligman*, 107 U. S. 20.

In the enforcement of statutes or the construction of statutes, the Federal courts make no extrinsic inquiry. *William* v. *Gaylord*, 186 U. S. 157; *Flash* v. *Connecticut*, 109 U. S. 37; *Whitfield* v. *Ætna Life Ins. Co.*, 205 U. S. 489.

In questions of policy, the statutes and decisions of the state courts are controlling. *Vidal* v. *Girard*, 2 How. 127; *License Tax Case*, 5 Wall. 462; *N. Y. Life Ins. Co.* v. *Craven*, 178 U. S. 389.

In determining the public policy of a State as affecting an obligation arising in that State, the Federal courts not only give great consideration to the decisions on the question by state tribunals, but they are constrained to adopt those rulings as definitive of the policy of the State.

The law of this obligation is the law of Wisconsin, the place of execution of the contract, of payment of the first premium, and of performance.

Where the application is made is immaterial unless that is the place where the final contract was closed. *Masneger*

*v. Hamilton*, 101 California, 532; *Brown* v. *Westerfield*, 47 Nebraska, 399; *Nicholson* v. *Cosmos*, 90 Indiana, 515.

The legislature of Wisconsin has expressly authorized this company to undertake this risk, and the court should refuse to narrow or limit it. The breadth of this statute cannot be limited by consideration of public policy. A statute is the authoritative and final declaration of public policy. *Carpenter's Estate*, 170 Pa. St. 203; *Hadden* v. *Barney*, 5 Wall. 518; *Shellenberger* v. *Ransom* (Neb.), 25 L. R. A. 565; *Owens* v. *Owens*, 100 N. Car. 242; *In re Runk* (Ia.), 101 N. W. Rep. 151; see also *McKinnon* v. *Lundy*, 24 Ontario, 132; *In re Gollnik's Estate*, 128 N. W. Rep. 292 (Minn.).

The decisions of Wisconsin support the recovery in this case. *Patterson* v. *Premium Ins. Co.*, 100 Wisconsin, 118.

The right asserted is a property right vested by the special statute of incorporation which is not divested by crime. This rule controls this case.

The charter controls the rights of members irrespective of the place where such rights may have been acquired. *Glenn* v. *Liggett*, 135 U. S. 533; *Smith* v. *Kernochen*, 7 How. 198; *Jellenik* v. *Huron Copper Co.*, 177 U. S. 1; *Flash* v. *Connecticut*, 109 U. S. 371.

Under the charter of the company McCue occupied the relation of a member of the company. This was a valuable property right. Upon his death this membership passed to his executors. 21 Am. & Eng. Ency., 269; *Condon* v. *Mutual Reserve Assn.*, 89 Maryland, 73, 99; *Huber* v. *Martin*, 3 L. R. A. 653.

The charter provides for devolution of the right on death. *McCoy* v. *Northwestern Relief Association*, 92 Wisconsin, 577; Angell and Ames Corp., § 410.

Where the law provides a method of devolution, that method controls and the courts do not inquire further. Broom Leg. Max., 289; *Shellenberger* v. *Ransom* (Neb.), 25 L. R. A. 565; *Ownes* v. *Ownes*, 100 N. C. 242; *Holden*

v. *Ancient Order* (Ill.), 31 L. R. A. 70; *Deem* v. *Milliken,* 6 Ohio C. Ct. Rep. 357; *Carpenter's Estate,* 170 Pa. St. 203; *McKinnon* v. *Lundy,* 24 Ont. Rep. 132; *Riggs* v. *Palmer,* 115 N. Y. 506 has been expressly disapproved by *Schellenberger* v. *Ransom, supra,* by *Carpenter's Estate, supra,* and the New York court refused to follow it in *Ellerson* v. *Westcott,* 148 N. Y. 149.

In *Collins* v. *Metropolitan Life Ins. Co.,* 93 N. W. Rep. 542, decided by the Supreme Court of Illinois a few days after this case was submitted in the Circuit Court of Appeals, a recovery was allowed.

Death on the gallows is not impliedly excepted from the risks undertaken. Public policy does not except.

The terms of the policy cover the risk.

The canon of construction, *expressio unius, etc.,* forbids a construction excepting this risk. *Hawkins* v. *United States,* 96 U. S. 689; *Schmidt* v. *Life Assn.* (Ia.), 51 L. R. A. 141; *McDonald* v. *Triple Alliance,* 57 Mo. App. 87; *Harper's Admr.* v. *Ins. Co.,* 19 Maine, 506; *Supreme Lodge* v. *Menkhausen, supra; Clever* v. *Mutual etc. Co.,* 1 Q. B. D. 147.

In excepting death from certain causes, the company has undertaken to pay in case of death from all other causes.

An insurance policy will be construed most strongly against the company, because the words are its words. *Royal Ins Co.* v. *Martin,* 192 U. S. 149.

A clause excepting similar contingencies to those under which the insured died in this case is very common in life insurance policies. The fact that this policy contains no such exception when such exception is common shows that none were intended. *Patterson* v. *Premium Ins. Co.,* 100 Wisconsin, 118; *Moore* v. *Woolsey,* 4 E. & B. I. B. 243.

This was a risk actually covered by the policy; the premium paid was regulated from mortality tables which

are made up from statistics of deaths—all deaths in a given length of time, not deaths from certain causes, *Campbell* v. *Supreme Conclave*, 54 L. R. A. 576,—an average expectancy of life derived from experience tables embracing suicide as well as all other causes of mortality. *Lange* v. *Royal Highlanders* (Neb.); 110 N. W. Rep. 1110.

McCue had other insurance on his life. The fact that other companies paid shows their view of the contract. That so many paid shows a general custom in insurance circles that this is a risk actually covered by the policy.

The company by paying the premium into court has admitted for purposes of this action that risk of death at the hand of the law was a risk covered by this policy. 1 Hughes on Procedure, §§ 93, 202; Greenleaf Ev. (15th Ed.), 282.

If the McCue estate cannot recover, the innocent parties interested will be admitted as claimants. *Cleaver* v. *Mult. Reserve Fund L. Assn.*, 1 Q. B. 147.

In this case the infant plaintiffs, the children, do not take under McCue in this aspect of the case, by inheritance; it would be misnomer to speak of heirs inheriting personal property; their claim is directly against the company; they are *persona designata.* *Miller* v. *Reed*, 64 Connecticut, 240; *Hodge's Appeal*, 8 W. N. C. (Pa.) 209; *Mullins* v. *Thompson*, 51 Texas, 7; *Thompkins* v. *Levy*, 87 Alabama, 263; 4 Words & Phrases, p. 3254, "Heirs."

Where the assured makes a policy payable to his children, the law of Wisconsin is stated in *Patterson* v. *Premium Ins. Co.*, 100 Wisconsin, 118; *Palmer* v. *Welch*, 132 Illinois, 141; *Alexandria* v. *Parker*, 144 Illinois, 355.

Payment must be made in every case where there is any hand to receive it, and forfeiture is not to be tolerated. *Fuller* v. *Linzee*, 135 Massachusetts, 469; *Bancroft* v. *Russell*, 157 Massachusetts, 47; 31 N. E. Rep. 10; *Haskins* v. *Kendall*, 158 Massachusetts, 224; 33 N. E. Rep. 495; *Newman* v. *Covenant Mutual Ins. Asso.*, 76 Iowa, 56; 1 L.

R. A. 659; *Schmidt* v. *Northern Life Asso.* (Ia.), 51 L. R. A.
141; *Supreme Lodge* v. *Menkhausen*, 209 Illinois, 277; *N. Y.
L. Ins. Co.* v. *Davis*, 96 Virginia, 737; Cooley, Briefs on In-
surance, 3226.

The cases cited do not militate against recovery on the
principles above set out. *Fauntleroy's Case*, 4 Bligh, 194,
relied on in *Burt* v. *Union Central L. Ins. Co.*, 187 U. S.
372, does not establish any principle controlling this case,
certainly as far as the infant plaintiffs are concerned; and
see *Dowley* v. *Shiffer*, 36 N. Y. Supp. 869; *Moore* v. *Wool-
sey, supra; Lodge* v. *Menkhausen*, 101 A. S. Rep. 239;
*Sun Life Ins. Co.* v. *Taylor* (Ky.), 56 S. W. Rep. 668;
*Harper* v. *Ins. Co.*, 19 Maine, 506; *McDonald* v. *Triple
Alliance*, 57 Mo. App. 87.

In *Burt* v. *Union Central*, 187 U. S. 362, it did not ap-
pear that there had been any legislative pronouncement
of public policy nor had the courts defined the public
policy governing contracts of this order, and that case
can be distinguished on other grounds also. See *Halch* v.
*Mut. L. Ins. Co.*, 120 Massachusetts, 550.

The present policy of the law is to require of insurance
companies a strict liability for their losses. *Lord* v. *Dall*,
12 Massachusetts, 115; *Fidelity and Casualty Co.* v. *Erch-
leiss*, 30 L. R. A. 587; *A. R. R.* v. *M. T. & D. Co.*, 38
L. R. A. 116; *Trenton P. R. R. Co.* v. *Guarantors L. I.
Co.*, 44 L. R. A. 213. See *Water* v. *Merchants &c. Ins. Co.*,
11 Pet. 213; *Phœnix Ins. Co.* v. *Erie Trans. Co.*, 117 U. S.
312; *Courtemanches* v. *Supreme Court, I. O. of O.*, 136
Michigan, 30; *Supreme Lodge* v. *Gelbke*, 64 N. E. Rep.
1058; *S. C.*, 198 Illinois, 365; *Gootzman* v. *C. Mut. Ins. Co.*,
3 Hun (N. Y.), 515; *Griffin* v. *Western Mut. Asso.*, 20 Ne-
braska, 620; *Cluff* v. *Mut. Life Ins. Co.*, 99 Massachusetts,
317; *Wareck* v. *Mutual Reserve*, 62 Minnesota, 39; *Simp-
son* v. *Life Ins. Co.*, 115 N. Car. 393; *Mutual Reserve Asso.*
v. *Payne*, 32 S. W. Rep. (Tex.) 1036; *Supreme Court of
Honor* v. *Updegraff*, 68 Kansas, 474.

The legislatures also have made provision for the protection of persons contracting with insurance companies. See Penna. Stat., Laws, 1881, p. 20; Kentucky Stat., § 679; New York, 3 Rev. Stat. (8th Ed.), p. 1688; 2 Cooley Briefs on Ins. 1189; Mo. Rev. Stat., § 5982.

MR. JUSTICE McKENNA delivered the opinion of the court.

The question in the case is whether death by the hand of the law in execution of a conviction and sentence for murder, is covered by a policy of life insurance though such manner of death is not excepted from the policy, there being no question of the justness of the sentence.

The case was in equity and brought in the Corporation Court for the city of Charlottesville, State of Virginia, by respondents, children and sole heirs of James S. McCue, by Marshall Dinwiddie, their next friend, upon a policy of life insurance issued to McCue by petitioner, named herein as the insurance company.

The main defense of the insurance company was (there were some technical defenses with which we are not concerned) that McCue came to his death by hanging after conviction and sentence for the murder of his wife.

The suit was brought under the laws of the Commonwealth of Virginia against the insurance company, the People's National Bank, of Charlottesville, as garnishee, and the executors of McCue's estate.

The case was removed on the petition of the insurance company on the ground of a separable controversy to the Circuit Court of the United States for the Western District of Virginia. In that court there was a demurrer filed to the bill which raised the question as to the proper arrangement of the parties and whether the heirs or the executors were the parties to recover on the policy, assuming that the insurance company was liable. In the answer

the same questions were again raised and all liability of
the insurance company denied, principally on the ground
of the manner by which McCue came to his death.

At the trial the technical defenses were waived and by
agreement of the parties the heirs of McCue and his ex-
ecutors were treated as parties plaintiff. The court con-
sidering the cause as one at law, and a jury having been
waived by the parties, adjudged on the pleadings and an
agreed statement of facts, "that the plaintiffs take nothing
by their bill, and that said defendant go without day,"
with costs, the latter to be paid by a deposit made in the
registry of the court in refund of the premium paid by
McCue, as far as it would go. The judgment was reversed
by the Court of Appeals and a new trial ordered. This
certiorari was then petitioned for and allowed.

The facts as agreed are these: The insurance company is
a corporation duly organized under the laws of Wisconsin
and a citizen and resident thereof. It is a mutual insur-
ance company, with the power and obligations given to
and imposed upon it by certain acts of the legislature of
Wisconsin, which acts constitute its charter.

The People's National Bank of Charlottesville was
made a party solely as garnishee, it having certain sums
of money belonging to the insurance company in its pos-
session.

McCue made written application to the insurance com-
pany in his own handwriting for the policy in suit, in pur-
suance of which the policy was issued for the sum of
$15,000 on his life. He paid premiums as follows: When
the policy was delivered to him he gave his note for the
sum of $427.50 for the premium to E. L. Carroll and L.
Fitzgerald, payable to their order, six months after date,
at the Jefferson National Bank, Charlottesville, Virginia.
Carroll & Fitzgerald at the time were soliciting insurance
for T. A. Cary, the general agent of the insurance com-
pany in Virginia. The note was endorsed by Carroll &

Fitzgerald to Cary, with the following memorandum attached: "$427.50.   Hold this note in Mr. Cary's office (don't use bank.)   Notify Mr. McC. about thirty days before due, and send it to E. L. Carroll for collection." Carroll & Fitzgerald gave their individual notes to Mr. Cary, amounting to $427.50, on which he advanced the money to the company and held the notes for collection, with McCue's note as collateral.

The company received, at its home office in Milwaukee, the amount of the premium in cash from Cary on May 2, 1904, but had no knowledge of the note arrangement between McCue, Carroll & Fitzgerald and Cary.   The note was paid by McCue by checks after he had been arrested, he protesting his innocence, "which facts were known to Cary."   The note arrangement was a general custom among soliciting agents for the company.   Other facts will be noted hereafter.

The main question in the case is, as we said, the liability of the company under the circumstances.   Or, to put it more abstractly for the present purpose of our discussion, whether a policy of life insurance insures against death by a legal execution for crime?

The question was before this court in *Burt* v. *Union Central Life Insurance Company*, 187 U. S. 362.   In the policy passed on, as in the policy in the case at bar, there was no provision excluding death by the law.   It was decided, however, that such must be considered its effect, though the policy contained nothing covering such contingency.   These direct questions were asked: "Do insurance policies insure against crime?   Is that a risk which enters into and becomes a part of the contract?"   And answering, after discussion, we said (p. 365): "It cannot be that one of the risks covered by a contract of insurance is the crime of the insured.   There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy.   Public policy forbids the inser-

tion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for." Cases were cited, among others *Ritter* v. *Mutual Life Insurance Company*, 169 U. S. 139. There it was held that a life insurance policy taken out by the insured for the benefit of his estate was avoided when one of sound mind intentionally took his life, irrespective of the question whether there was a stipulation in the policy or not. And the conclusion was based, among other considerations, upon public policy, the court saying (p. 154) that "a contract, the tendency of which is to endanger the public interests or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment."

These cases must be accepted as expressing the views of this court as to the public policy which must determine the validity of insurance policies, and which they cannot transcend even by explicit declaration, much less be held to transcend by omissions or implications, and we pass by, therefore, the very interesting argument of counsel for respondents as to the indefinite and variable notions which may be entertained of such policy according to times and places and the temperaments of courts, and the danger of permitting its uncertain conceptions to control or supersede the freedom of parties to make and to be bound by contracts deliberately made. We come, therefore, immediately to the special contention of respondents, that the contract in controversy is a Wisconsin contract, and is not offensive to the public policy of that State or to its laws, but was indeed, as it is contended, made in conformity to the laws of that State, and carries all of their obligations.

The obligation of a contract undoubtedly depends upon

the law under which it is made. In which State, then, Virginia or Wisconsin, was the policy made? In *Equitable Life Assurance Society* v. *Clements*, 140 U. S. 226, the question arose whether the contract of insurance sued on was made in New York or Missouri. The assured was a resident of Missouri, and the application for the policy was signed in Missouri. The policy, executed at the office of the company, provided that the contract between the parties was completely set forth in the policy and the application therefor, taken together. The application declared that the contract should not take effect until the first premium should have been actually paid during the life of the person proposed for assurance. Two annual premiums were paid in Missouri, and the policy, at the request of the assured, was transmitted to him in Missouri, and there delivered to him. The court said (p. 232): "Upon this record, the conclusion is inevitable that the policy never became a completed contract, binding either party to it, until the delivery of the policy and the payment of the first premium in Missouri; and consequently that the policy is a Missouri contract and governed by the laws of Missouri."

In *Mutual Life Insurance Company of New York* v. *Cohen*, 179 U. S. 262, the insurance policy contained a stipulation that it should not be binding until the first premium had been paid and the policy delivered. The premium was paid and the policy delivered in Montana. It was held (p. 264) that "under those circumstances, under the general rule, the contract was a Montana contract, and governed by the laws of that State." Citing *Equitable Life Assurance Society* v. *Clements*, *supra*.

The same conditions existed in *Mutual Life Insurance Company* v. *Hill*, 193 U. S. 551, and it was decided, the two cases above mentioned being cited, that the policy of insurance involved was a Washington contract, not a New York contract.

In the case at bar the application was made by McCue at Charlottesville, Virginia, February 25, 1904, and the policy was delivered to him there on March 15, 1904, when he gave his note for the premium which was payable at that place and subsequently paid there. And it is provided in the policy that it should not take effect until the first premium should be actually paid. Following that provision is this: "In witness whereof the Northwestern Mutual Life Insurance Company, at its office in Milwaukee, Wisconsin, has by its president and secretary signed and delivered this contract, this fifteenth day of March, one thousand nine hundred and four." But manifestly this was not intended to affect the preceding provision fixing the time when the policy should go into effect, nor the legal consequences which followed from it. In *Equitable Life Assurance Society* v. *Clements* the policy was executed at the company's office in New York. The exact conditions therefore existed which made, in the cases cited, the policies involved therein not New York contracts but, respectively, Missouri, Montana and Washington contracts. The policy, therefore, in the case at bar, must be held to be a Virginia and not a Wisconsin contract.

Respondents, however, contend that "the right asserted is a property right vested by the special statute of incorporation which is not divested by crime," and that "the charter controls the rights of members irrespective of the place where such rights may have been acquired." To support the contention that the right asserted is a property right, respondents adduce §§ 1, 4, 7 and 20 of the charter. Their argument is brief and direct, and we may quote it. It is as follows: "Under the charter of the company McCue occupied the relation of a member of the company. This was a valuable property right. Upon his death this membership passed to his executors." And further: "The charter of the company, § 1, provided that certain persons

named 'and all other persons who may hereafter associate with them in the manner hereinafter prescribed shall be, and are, declared a body politic and corporate.' Section 4 prescribes that persons who shall hereafter insure with the company 'shall thereby become members thereof.' And section 7 prescribes the manner in which this membership is to be perfected. 'Every person who shall become a member of this association, by effecting insurance therein, shall, the first time he effects insurance, pay the rates fixed by the trustees,' etc. There can be no doubt, then, that McCue was a member of this corporation. He insured with the company, and thereby he became a member. His interest in the company was fixed by the amount of his insurance. This membership constituted a vested property right. He was eligible as an officer, and entitled to vote in the management of the company (s. 20); entitled to the dividends on the surplus and profits (§ 2, § 13) and was a joint owner of the assets of the company." But this is assuming what is to be proved. It may be true that a person who insures with the company becomes a member thereof and that his interest is fixed at the amount of his insurance. But what constitutes his title or right? Necessarily his policy. What entitles him to a realization of the benefits of his membership? Necessarily, again, his policy, if the manner of his death be not a violation of it. We need not follow counsel, therefore, through their argument as to the rights of property and the rules of its devolution, which, it is contended, must obtain, whatever be the act or guilt of the person producing it. The question before us, and the only question, is: What rights did McCue's estate and children get by his policy? And we are brought back to the simple dispute as to whether the policy covers death by the hand of the law. This court has pronounced on that dispute, and its ruling must prevail in the Federal courts of Virginia, in which State the contract was made. And it is consonant with the ruling in the

state courts. In *Plunkett* v. *Supreme Conclave Improved Order of Heptasophs*, 105 Virginia, 643, a certificate of membership in the conclave, which was issued to one Charles W. Plunkett, his wife being beneficiary, was considered. One of the conditions was that Plunkett comply with the laws, rules and regulations then governing the conclave or that might in the future be enacted. There was no provision against suicide in the laws, rules or regulations when the certificate was issued. Such a provision was subsequently enacted. Plunkett committed suicide, and the Order refused to pay benefits. Plunkett's wife brought suit to recover them and asserted a vested interest in the benefits under the certificate. The contention was rejected. The trial court held that the forfeiture of the rights under the certificate, if the insured while sane committed suicide, was valid, because (1) it involved no vested right of the insured, and (2) because it was a fundamental, though unexpressed, part of the original contract that the insured should not intentionally cause his own death. And the court added (p. 646): "Inasmuch as the original contract and by-laws were silent upon the subject of suicide by the insured while sane, the new by-law is valid, because there can be no such thing as a vested right for a sane man to commit suicide, and for the further reason that it is nothing more than the written expression of the provision which the law had read into the contract at its inception."

The Supreme Court of Appeals affirmed the judgment, quoting the reasoning of the trial court, and added to it the considerations of public policy expressed in the *Burt Case* and *Ritter Case, supra,* and other cases. If the public policy of Virginia were the same as, it is contended, that of Wisconsin is, whether this court should have to yield it, we are not called upon to decide.

Being of opinion that McCue's policy was a Virginia contract, it may be unnecessary to review the cases relied

on by the respondents, which they contend declare the public policy of the State of Wisconsin. It may, however, be said that the cases are not absolutely definite.

Two cases only are cited, *McCoy* v. *Northwestern Mutual Relief Association*, 92 Wisconsin, 577, and *Patterson* v. *The Natural Premium Ins. Co.*, 100 Wisconsin, 118. We will not consider the facts in the first case. It is enough to say that the court, following a ruling that it had pronounced in other cases, said (p. 582), "if a contract for life insurance does not provide against liability in case of death by suicide or self-destruction, then such cause of death does not constitute a defense," citing four cases. The second also presented one of suicide, the insured being sane. It was contended that the policy did not cover such a risk, because (1) an incontestable clause (there being one) in the contract, did not cover such a death; (2) if it could be held so in terms it would be void as against public policy; (3) suicide was a crime and hence within a stipulation against death in violation of law.

The reliance of the insurance company to support its contentions was upon the *Ritter Case, supra.* The court, however, reiterated its former ruling as to death by suicide, though it recognized the cogency of the reasoning of the *Ritter Case*, that the insured should do nothing to accelerate the contingency of the policy, saying (p. 122): "were the question a new one in the law" the argument, "would be well nigh irresistible especially where, as in the *Ritter Case*, the policy runs in favor of the estate of the insured; and the proceeds will go to the enrichment of such estate, instead of to other beneficiaries."

There were other beneficiaries in the case, the policy having been assigned with the consent of the company to the children of the insured. Commenting further on that fact, the court said it brought the case within the principle of certain cases which were cited, but added "nor would the application of that principle to this case necessarily

conflict with the *Ritter Case,* where the policy was in favor
of the estate of the insured. It may well be in such a case
that the intentional suicide of the insured while sane would
prevent a recovery by his personal representatives, and
yet not prevent a recovery in case of a policy in favor of
beneficiaries who had a subsisting vested interest in the
policy at the time of the suicide, and who could not, if
they would, prevent the act of the insured." McCue's
policy was in favor of his estate and comes within the con-
cession made by the Supreme Court to the reasoning of the
*Ritter Case.*

The court did not discuss considerations of public pol-
icy, but we may assume it found nothing offensive to such
policy in a contract of insurance which covered death by
suicide, and it may be supposed that the court would find
nothing repugnant to public policy in a contract which did
not except death for crime. However, we need not specu-
late, as the Wisconsin law does not control the policy in
suit.

One other contention of respondents remains to be no-
ticed. It is contended that if the McCue estate cannot re-
cover, the innocent parties, his children, will be admitted
as claimants. To this contention we repeat what we have
said above, the policy is the measure of the rights of every-
body under it, and as it does not cover death by the law
there cannot be recovery either by McCue's estate or by
his children.

Judgment of the Court of Appeals is reversed, and that
of the Circuit Court is                                  *Affirmed.*