Karl D. TEEPLES and W. E. Thatcher, doing business as Teeples & Thatcher, Plaintiffs,

v.

W. TOLSON, for himself and representing other Underwriters at Lloyd's, London, Defendant.

Civ. No. 60-316.

United States District Court
D. Oregon.

May 22, 1962.

Veatch, Bauman & Lovett, Frank A. Bauman, Portland, Or., for plaintiff.

Mautz, Souther, Spaulding, Kinsey & Williamson, Kenneth E. Roberts, Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiffs demand judgment against the defendant insurance company for the

sum of $77,455.00 with interest and attorney fees. Plaintiffs are engaged in the general construction business in the state of Oregon. Defendant and associated underwriters are engaged in the insurance business and are authorized to carry on an insurance underwriting business in the state of Oregon.

On December 7, 1959, plaintiffs signed a contract to erect a department store building in the city of Portland and thereafter commenced the construction of such building. In January 1960 defendant, in consideration of payment of a premium, issued to plaintiffs a policy of insurance with a limit of $100,000.00, the defendant intending to insure plaintiffs during the course of the construction of said building under the terms and conditions set forth in the certificate of insurance, which certificate was in full force and effect at the time of the occurrence hereinafter mentioned.

During the course of construction a segment of the building collapsed due to defects in design and engineering in the joints of the concrete beams.

In May 1960, plaintiffs presented a claim to defendant for an amount in excess of the face of the policy and in June 1960, defendant paid to plaintiffs on said claim the estimated cost of repair of the units of the structure which actually collapsed and the repair of certain joints where damage was visible. After the initial collapse, plaintiffs, working with a representative of defendant, engaged the services of a new architect and engineer and he concluded that the initial design of said structure was wholly inadequate to support its weight and that a new and different design, reinforcing and changing the original, was absolutely necessary. The shoring mentioned was temporary in nature and for the time being prevented the collapse of the remainder of the joints in question. The shoring had to be removed in order to properly utilize the floor space and when removed, the joints would collapse unless reinforced.

The parties agree that the new architect is well qualified in this field. He arrived at the conclusion that the entire structure was under-designed and could not carry the weight load which would be required.

■■ The language on the face of the policy would indicate that it was an all risk type.[1] The language of the insuring clause is quite broad.[2] However, there is an express limitation of liability in the policy.[3] The exclusionary clause [4]

1. "COVERAGE: ALL RISK ON BUILDINGS IN COURSE OF CONSTRUCTION"

2. "This Policy/Certificate insures: as follows:
"1. Against any and all risks of physical loss or damage from any cause whatsoever (except as excluded in Paragraph 4), occurring in the period commencing at 12:01 a.m., January 1, 1960 and ending at 12:01 a.m., January 1, 1961, Standard Time.
"(a) For an amount not greater than One Hundred Thousand Dollars ($100,-000.00) on any one contract under construction by the Assured including foundations, additions, attachments and all permanent fixtures belonging to and constituting a part of said contract.
"(b) This Policy/Certificate also covers materials, equipment, supplies and temporary structures of all kinds incident to the construction and completion of said contract and (when not otherwise insured), builder's machinery, tools and equipment belonging to the Assured or similar properties belonging to others for which the Assured is liable. * * *"

3. "3. The limit of the Underwriters' liability hereunder is the actual value of the property damaged at the time of loss or the cost of repair thereof, but in no event shall the liability of the underwriters hereunder exceed the sum of —————— any one accident."

4. "4. Exclusions: This Policy/Certificate shall not cover:
"(1) Loss or damage to the property insured caused by fire and/or lightning;
"(2) Loss or damage occasioned by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, all as per conditions of Standard Forms Bureau Form #202 (Extended Coverage Endorsement);
"(3) Loss or damage occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection,

is quite limited in scope. The intention of the parties is declared in another portion of the policy.[5] The expert, so engaged by plaintiffs, arrived at the conclusion that it was necessary to redesign the entire building. At the time of the partial collapse, the structure was in skeleton form only, but the cost of construction to that date far exceeded the face of the policy. The redesigned structure, which was eventually completed and on which damages are claimed under the policy, contained a great amount of material and labor over and above what would be required under the original plans and the cost of such would be greatly in excess of the cost to repair all of the beams and joints, those which collapsed and those which were shored up. The original claim of the plaintiffs was as follows:

| | | |
|---|---|---|
| (1) | Repair Beams | $ 58,140.00 |
| (2) | Costs incidental to collapse and repair | 8,618.00 |
| (3) | Electrical and pipe changes arising hereunder | 2,000.00 |
| (4) | Welding Expenses | 2,065.00 |
| (5) | Bridging Expenses | 6,526.00 |
| (6) | Column remodeling and escalator framing | 6;062.00 |
| (7) | Wall shearing (tentative estimate) | 8,395.00 |
| (8) | Tie Roof together | 15,015.00 |
| (9) | Engineering fees | 8,760.00 |
| | Total | $115,571.00 |

In the trial the estimated cost was increased by the expert to $140,000.00. However, as I look at the record, there was no breakdown in this last estimate on which a court could properly act. Damages must be proved with reasonable certainty. Parker v. Harris Pine Mills, Inc., 206 Or. 187, 205, 291 P.2d 709, 56 A.L.R.2d 382. The same rule applies to proof on the cost of repairs. The expert fixed the cost of repairing the collapsed and cracked joints at $22,795.00, which sum, less $250.00 ($22,545.00) has heretofore been paid by defendant to plaintiffs, without surrender of any rights.

It is the plaintiffs' contention that defendant is liable under the policy, not only for the actual cost of the repair of the collapsed portion of the building, but also for the added expense of labor, material and engineering expenses under the redesign prepared by said expert. In addition, plaintiffs contend that they are entitled to a reasonable attorney fee and interest from May 7, 1960, the date of the claim.

Defendant contends that plaintiffs were paid in full for the cost of repair of any damage which actually occurred at or about the time of the partial collapse.

In construing an insurance policy covering Oregon property, the law of the state of Oregon should apply. Prudential Insurance Co. of America v. Winn, 9 Cir., 1934, 71 F.2d 126; Northwestern Mutual Life Insurance Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419; Colonial Coach Manufacturing Corp. v. Home Insurance Co., 7 Cir., 1958, 260 F.2d 532. The guiding principles of law are not seriously in dispute. The proper application of that law to the unique facts in the case is the problem before the court. Defendant concedes it is liable for actual damage that might have occurred in the partial collapse, even though such damage was caused by design defect. No quarrel is made with the rule that an insurance policy must be construed most strongly against the insurer, Employers' Liability

military or usurped power or martial law, or confiscation by order of any government or public authority;

"(4) Marring, scratching or breakage of materials and supplies while in transit to the site of the contract;

"(5) Loss or damage to the insured equipment except while such equipment is at the site of the job on which it is to be used."

5. "14. The intent of this insurance is to cover the Assured against loss or damage to any building being constructed by the Assured under contract, when such loss or damage arises by reason of the perils insured hereunder."

Assur. Corporation, Ltd. of London, England v. Portland Electric Power Company, 9 Cir., 1926, 15 F.2d 976, or that any reasonable doubt as to the meaning of the language of the policy must be resolved against defendant. Roberts v. Union Insurance Society, 215 Or. 183, 332 P.2d 600. Defendant recognizes, as it must, that if the language of a policy is reasonably susceptible of two constructions, the one in favor of the insured must be adopted. Geo. B. Wallace Co. v. State Farm Mutual Insurance Co., 220 Or. 520, 349 P.2d 789. ·

▮ The above statements must give way to the primary and inflexible rule that policies of insurance, like all other contracts, are to be construed so as to ascertain and declare the true intention of the parties. In applying this rule, the insurance policy must be read as a whole and the separate clauses construed together. All other rules of construction are secondary and are used only for the purpose of giving proper application to the primary rule. It is presumed that the parties intended each clause to accomplish some specific purpose and it is not proper to assume such clause is without meaning. I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 317, 318, 273 P.2d 212, 275 P.2d 226.

▮ When we turn to the insuring clause in the contract, we find clear and unambiguous language as to the risk. The risk involved was physical loss or damage from any cause whatsoever. The intention of the parties is made quite positive by the clause which limits the insurance company's liability to the actual value of the property *damaged* at the time of the loss or the cost of repair thereof. Can it be said that by the use of this language the parties intended to cover the cost of the redesign, the re-engineering and the cost of the additional labor and material thus required? The court, in answering the question, must place itself in the position of the contracting parties. It is clear that the de-

sign, consisting of the original plans and specifications, was complete and before the parties at the time the policy was issued. Beyond question, both parties assumed that the design was adequate. Otherwise, plaintiffs would not have started construction and defendant would not have issued the policy. Neither party contemplated, at that time, that the entire structure would have to be redesigned before completion. Incorporated in the contract was a presumption [6] that the ordinary course of business had been followed. In the ordinary course of business the parties to a construction contract would take for granted the sufficiency and adequacy of the building design and defendant could presume that plaintiffs and the original architect and engineer took ordinary care in preparing the design of the building.[7] A reasonable construction of the language of the insuring agreements of the policy force me to the inevitable conclusion that the policy was never intended to cover extra costs and expenses incurred in connection with obeying the directions of a new design. There is nothing in the insurance contract between the parties which requires defendant to reconstruct the skeleton of the building in accordance with a revised design, plans or specifications. This being true, the plaintiffs' theory of recovery beyond the necessary cost and expense of repairing the beams which had actually collapsed or would collapse if the shoring was removed, is untenable.

▮ On the other hand, the policy, by clear and unambiguous language, covers all risks of physical loss and damage, except as excluded in paragraph 4. Physical loss or damage to the beams or joints in the beams was certainly included unless excepted by the exclusion clause. This clause made no such exception. Although an exclusion clause in an insurance policy must be strictly construed against the insurer, such clause cannot add to the express risk assumed by the insurer in the insuring clause. The difficulty is not in the interpretation of the

6. ORS 41.360(20).

7. ORS 41.360(4).

language of the policy, but in the application of the risk, as expressed in the policy, to the rather unusual factual background. The testimony is undisputed that the joints, as such, could be repaired and that on such repair they would be stronger than the joints as originally designed. True enough, the repair of the joints and the beams would not eliminate the other defects in design. Those defects, however, where physical loss or damage did not actually occur, were not covered by the risk insured. I hold that the beams and joints which were prevented from falling by reason of the shoring process, had suffered physical loss and damage within the meaning of the policy. The record is conclusive that the shored up joints would have collapsed if plaintiffs had not taken corrective measures. Such joints, although remaining in place, were, in my opinion, a physical loss and were damaged to the same degree and, generally, to the same extent as those on which defendant paid the said sum of $22,545.00. On the original claim submitted by plaintiffs the cost of repairing the beams in the sum of $58,140.-00, the cost incidental to the collapse and repair of the beams in the sum of $8,-618.00, the welding expense and the electrical and pipe changes in the sum of $4,065.00, would fall within the risk under my interpretation of the policy. While the repaired beams are stronger than those which collapsed, I feel that such type of repair was within the contemplation of the parties. The remaining items on the original claim consisting of bridging expense, column and escalator remodeling, wall shearing, roof tying and engineering fees, on which no physical loss or damage was shown, would be definitely aligned with the additional cost involved in the new design of the structure, entirely unconnected with the original design and, therefore, not proper charges under the policy. We must keep in mind that the burden of proof on damages, like other elements of the case, is on the plaintiffs. It was not the intention of the parties that the risk should cover a defect in design unless actual physical loss or damage occurred. I find the total physical loss and damage, under the policy, to be the sum of $70,823.00, from which should be deducted $250.00, under the terms of the policy, and $22,-545.00, heretofore paid, leaving a balance of $48,028.00, in which sum plaintiffs are awarded judgment against defendant. Said sum shall draw interest at the rate of 6% per annum from May 7, 1960.

The authorities cited by counsel for the respective parties have received the court's careful consideration. A recording of my analysis of these cases would be of no assistance to the bench or bar in the solution of this, or similar problems. Suffice to say the cases, while helpful, are not directly in point.

This opinion and the admitted facts shall stand as my findings and conclusions on the issues of fact and law involved. Ruling is reserved on the amount of attorney fees to be allowed.